UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| HOLLIS M. GREENLAW,<br>TODD F. ETTER,<br>CARA D. OBERT,<br>BENJAMIN L. WISSINK,<br>UMT HOLDINGS, L.P.,<br>UDF HOLDINGS, L.P.,<br>UNITED DEVELOPMENT FUNDING, L.P.,<br>UNITED DEVELOPMENT FUNDING III, L.P.,<br>UNITED DEVELOPMENT FUNDING IV, L.P.,<br>UNITED DEVELOPMENT FUNDING INCOME FUND, V,<br>UNITED MORTGAGE TRUST,<br>AND<br>UNITED DEVELOPMENT FUNDING LAND OPPORTUNITY, FUND, L.P.,<br><br>      Plaintiffs,<br><br>  v.<br><br>DAVID KLIMEK,<br>JAMES NICHOLAS BUNCH,<br>CHRISTINE L. EDSON, a/k/a CHRISTY EDSON,<br>and DOES 1 – 10.<br><br>      Defendants. | Case No. 4:20-cv-00311-SDJ |

**REPLY IN SUPPORT OF DEFENDANTS KLIMEK, BUNCH, AND EDSON'S
MOTION TO DISMISS THE COMPLAINT UNDER RULE 12(b)(6)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

   I.    Special Factors Counsel Hesitation in Extending *Bivens* to Plaintiffs' Claims ................... 1

      A.   Plaintiffs' Claims Unquestionably Arise in a New *Bivens* Context ............................... 2

      B.   Alternative Remedies and Other Special Factors ........................................................... 4

          1.    Plaintiffs Misstate the Standard for Alternative Processes ........................................... 4

          2.    Plaintiffs Misconstrue the Additional Special Factors Counseling Hesitation ............. 5

   II.   Plaintiffs' Claims Are Time-Barred and No Tolling Provisions Apply .......................... 7

   III.  Plaintiffs Have Not Overcome Defendants' Entitlement to Qualified Immunity ............ 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 9
*Brown v. Nationsbank Corp.*,
   188 F.3d 579 (5th Cir. 1999) ................................................................................................. 7
*Canada v. United States*,
   950 F.3d 299 (5th Cir. 2020) ............................................................................................. 1, 4
*Cantú v. Moody*,
   933 F.3d 414 (5th Cir. 2019) ......................................................................................... passim
*Carlson v. Green*,
   446 U.S. 14 (1980) ................................................................................................................ 4
*Chappell v. Wallace*,
   462 U.S. 296 (1983) .............................................................................................................. 4
*Conn v. Gabbert*,
   526 U.S. 286 (1999) ............................................................................................................ 10
*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) ................................................................................................................ 4
*Corsi v. Mueller*,
   422 F. Supp. 3d 51 (D.D.C. 2019) ........................................................................................ 6
*Corsi v. Mueller*,
   819 F. App'x 6 (D.C. Cir. 2020) ........................................................................................... 6
*De La Paz v. Coy*,
   786 F.3d 367 (5th Cir. 2015) ................................................................................................. 4
*District of Columbia v. Wesby*,
   138 S. Ct. 577 (2018) .......................................................................................................... 10
*Farah v. Weyker*,
   926 F.3d 492 (8th Cir. 2019) ............................................................................................. 5, 6
*Franks v. Delaware*,
   438 U.S. 154 (1978) .......................................................................................................... 2, 6
*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020) ........................................................................................................ 3, 4
*Hernandez v. Mesa*,
   885 F.3d 811 (5th Cir. 2018) ................................................................................................. 4
*Jacobs v. Alam*,
   915 F.3d 1028 (6th Cir. 2019) ............................................................................................... 2
*Jensen v. Snellings*,
   841 F.2d 600 (5th Cir. 1988) ................................................................................................. 7
*Lanuza v. Love*,
   899 F.3d 1019 (9th Cir. 2018) ............................................................................................... 6
*Maria S. as Next Friend for E.H.F. v. Garza*,
   912 F.3d 778 (5th Cir.) .......................................................................................................... 1

*Maria S. as Next Friend for E.H.F. v. Garza*,
  140 S. Ct. 81 (2019) ................................................................................................... 2
*Marks v. Hudson*,
  933 F.3d 481 (5th Cir. 2019) ...................................................................................... 9
*Matter of Hoffman*,
  955 F.3d 440 (5th Cir. 2020) ................................................................................. 7, 8
*McCoy v. Hernandez*,
  203 F.3d 371 (5th Cir. 2000) ...................................................................................... 9
*Oliva v. Nivar*,
  --- F.3d ---, No. 19-50795, 2020 WL 5227472 (5th Cir. Sept. 2, 2020) ................. 1, 3
*Reed v. City of Arlington*,
  650 F.3d 571 (5th Cir. 2011) ...................................................................................... 9
*Rroku v. Cole*,
  726 F. App'x 201 (5th Cir. 2018) ............................................................................... 2
*Schweiker v. Chilicky*,
  487 U.S. 412 (1988) ................................................................................................... 5
*Spotts v. United States*,
  613 F.3d 559 (5th Cir. 2010) ...................................................................................... 7
*Texas v. Allan Constr. Co.*,
  851 F.2d 1526 (5th Cir. 1988) .................................................................................... 8
*Thompson v. Deutsche Bank Nat. Tr. Co.*,
  775 F.3d 298 (5th Cir. 2014) ...................................................................................... 8
*United States v. Briggs*,
  514 F.2d 794 (5th Cir. 1975) .................................................................................... 10
*United States v. Kubrick*,
  444 U.S. 111 (1979) ................................................................................................... 7
*United States v. Robel*,
  389 U.S. 258 (1967) ................................................................................................. 10
*Wilkie v. Robbins*,
  551 U.S. 537 (2007) ............................................................................................... 4, 5
*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017) ................................................................................... 1, 2, 3, 4

The plaintiffs ask this Court to depart from Supreme Court and Fifth Circuit precedent and engage in the "disfavored judicial activity" of extending *Bivens* to their constitutional tort claims. *See Cantú v. Moody*, 933 F.3d 414, 421–22 (5th Cir. 2019), *cert denied*, 2020 WL 3146702 (U.S. June 15, 2020); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). Their statute of limitations and qualified-immunity arguments similarly misapply the law or ignore precedent. And so the *Bivens* defendants' motion to dismiss (ECF No. 25) should be granted.[1]

## I.  Special Factors Counsel Hesitation in Extending *Bivens* to Plaintiffs' Claims

In *Cantú*, the Fifth Circuit declined to extend *Bivens* to constitutional claims against FBI agents for providing false information in a warrant affidavit. *See* 933 F.3d at 423. Here, the plaintiffs similarly allege the defendants provided false and misleading statements and omissions in a search warrant affidavit. *See, e.g.*, Compl. ¶¶ 166–69. They say *Cantú* is distinguishable but offer only distinctions without a difference. *See* Opp. 11–15. Yet the parallels are obvious and foreclose recognizing plaintiffs' "would-be cause[s] of action" under *Bivens* for purported Fourth and Fifth Amendment violations. *Id.* at 421. Declining to extend *Bivens* here is also in line with the Fifth Circuit's other post-*Abbasi* precedents, largely ignored by the plaintiffs, in which the court has consistently declined to extend *Bivens* to a variety of claims under the Fourth and Fifth Amendments. *See Oliva v. Nivar*, --- F.3d ---, No. 19-50795, 2020 WL 5227472, at *4 (5th Cir. Sept. 2, 2020) (no *Bivens* remedy for unlawful seizure and excessive force claim against line-level VA police officers); *Canada v. United States*, 950 F.3d 299, 312 (5th Cir. 2020) (no *Bivens* remedy for due process claims against IRS officials); *Maria S. as Next Friend for E.H.F. v. Garza*, 912 F.3d 778, 785 (5th Cir.) (no *Bivens* remedy for due process claims against CBP

---

[1] The motion to dismiss the *sealed* complaint was filed under seal. But the defendants do not move to seal this reply brief since it responds to arguments in the publicly filed opposition brief.

officials), *cert. denied,* 140 S. Ct. 81 (2019); *Rroku v. Cole*, 726 F. App'x 201, 206 (5th Cir. 2018) (no *Bivens* remedy for immigration detainee's substantive due process claim).

### A. Plaintiffs' Claims Unquestionably Arise in a New *Bivens* Context

The plaintiffs concede their Fifth Amendment due process claim arises in a new *Bivens* context — the first step of the special factors inquiry. *See* Opp. 9; *see also Abbasi*, 137 S. Ct. at 1859–60. But they argue their Fourth Amendment claim based on alleged false and misleading statements and omissions in a warrant affidavit is on par with *Bivens* and is, therefore, not a new context. *See* Opp. 9–15. Checkmated by Fifth Circuit precedent they instead ask the Court to rely on distinguishable out-of-circuit unpublished district court decisions and out-of-circuit appellate decisions.[2] *See id.* 9–10 & n.3. That of course will not do.

The plaintiffs' Fourth Amendment claim "cannot be shoehorned" to match *Bivens,* and otherwise claiming "violation of the same clause of the same amendment in the same way . . . still doesn't cut it" for new context purposes. *Cantú*, 933 F.3d at 423. And though the Supreme Court in *Abbasi* set out a non-exhaustive list of considerations for deciding if a claim arises in a new context, *see* 137 S. Ct. at 1860, the plaintiffs acknowledge only three and misapply them at that. *See* Opp. 11–14. First, they contend *Abbasi*'s holding is limited to high-level, policymaking officials. *See id.* at 12–13. And that is simply not true. In *Abbasi* itself, the Supreme Court ruled

---

[2] An illustrative example of the plaintiffs' misplaced reliance on non-binding cases is their citation to *Jacobs v. Alam*, 915 F.3d 1028 (6th Cir. 2019). *See* Opp. 9–10. While they identify *Jacobs* as another "fabrication-of-evidence claim," it is far afield from the case at hand. In *Jacobs*, the plaintiffs brought Fourth Amendment claims after a shootout during a fugitive arrest operation, and the "fabrication of evidence" did not involve misstatements or omissions in a warrant affidavit. *See* 915 F.3d at 1033–34, 1042. Thus, *Jacobs* did not implicate the same Fourth Amendment principles as the claim here. *Compare id.* at 1042 (noting probable cause is not an element of a claim physical evidence was planted at scene), *with* Mot. 25–26 (explaining that *Franks v. Delaware*, 438 U.S. 154 (1978), governs the plaintiffs' Fourth Amendment claim and requires proof there was no probable cause).

2

a detainee abuse claim against a mid-level official arose in a new context, remanding for the lower court to consider special factors in the first instance. *See id.* at 1865. In *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020), the Court affirmed the Fifth Circuit's holding that Fourth Amendment claims against a line-level Border Patrol agent arose in a new context and that no *Bivens* remedy should be implied. In *Oliva*, --- F.3d ---, 2020 WL 5227472, at *3, the Fifth Circuit ruled that claims against VA police officers arose in a new context and withheld *Bivens* relief, just as it had earlier ruled in *Cantú*, 933 F.3d at 423, involving a Fourth Amendment claim against line-level FBI agents.

The plaintiffs' stab at the "generality or specificity of the official action" and "the extent of judicial guidance as to how an officer should respond" considerations, *Abbasi*, 137 S. Ct. at 1859–60, rests on a strained attempt to distinguish *Cantú*, *see* Opp. 12–14. But the plaintiffs' allegations about the materiality of the purported false statements and omissions in the affidavit are conclusory at best. *See* Mot. 23–28. And, as recognized in *Cantú* (and quite contrary to the opposition), claims alleging officers provided false and misleading statements in a warrant affidavit are not at all the same as *Bivens*, which involved a warrantless search and seizure in a person's home. *See Cantú*, 933 F.3d at 423.

To pose a new context, a claim need only "differ[] in a meaningful way" from the three *Bivens* claims previously recognized by the Supreme Court. *Abbasi*, 137 S. Ct. at 1859. The plaintiffs assign too much weight to this phrase and ignore that "even a modest extension is still an extension" requiring a special factors analysis. *Id.* at 1864. *Cantú* establishes that the plaintiffs' Fourth Amendment claim presents a new context because, unlike *Bivens*, the alleged unlawful search implicates different Fourth Amendment principles — there was a warrant, it was

3

executed at a business not a home, and the investigation involves securities fraud rather than drug interdiction. *See* Mot. 8–9.

## B.     Alternative Remedies and Other Special Factors

Although the plaintiffs suggest "the judiciary is well suited" to adjudicate their claims, Opp. 15–16, their case is foreclosed by the myriad special factors counseling against extending *Bivens* here, *see* Mot. 9–18. Also, the plaintiffs' factor-by-factor effort to refute the alternative processes and special factors here is contrary to the instruction that special factors be "taken together," *Chappell v. Wallace*, 462 U.S. 296, 304 (1983), and ignores the "remarkably low" threshold for a special factor to counsel hesitation, *Hernandez v. Mesa*, 885 F.3d 811, 823 (5th Cir. 2018) (en banc), *aff'd,* 140 S. Ct. 735 (2020).

### 1.     *Plaintiffs Misstate the Standard for Alternative Processes*

An "alternative, existing process," *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007), "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action," *Abbasi*, 137 S. Ct. at 1858. And contrary to the opposition arguments, an alternative process may counsel hesitation regardless of its adequacy or availability to the specific plaintiffs. *See* Opp. 16. All that is needed is "an avenue for *some* redress." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001). Thus, alternative processes need not provide damages or "complete relief." *Canada*, 950 F.3d at 310; *De La Paz v. Coy*, 786 F.3d 367, 377 (5th Cir. 2015).

The plaintiffs rely almost exclusively on *Carlson v. Green*, 446 U.S. 14 (1980), but read far too much into it. *See* Opp. 16, 20–21. *Carlson* was decided during the "*ancien regime*" from which the Supreme Court has now retreated. *See Abbasi*, 137 S. Ct. at 1855–56. *Carlson* said simply that the Federal Tort Claims Act did not, *standing alone*, counsel against extending *Bivens* to a prisoner's denial-of-medical-care claim. *See* Mot. 13 n.8. That doesn't boost the

4

plaintiffs' different claims here especially in light of recent Supreme Court and Fifth Circuit *Bivens* precedents. *Cantú*, for example, expressly considered and relied on "the existence of a statutory scheme for torts committed by federal officers"—i.e., the Federal Tort Claims Act— among the "legion" special factors counseling against extending *Bivens* to a warrant fabrication case. 933 F.3d at 423 (citing 28 U.S.C. § 2680(h); additional citations omitted). That forecloses the plaintiffs' reliance on *Carlson* and shows why their claims are properly dismissed.[3]

As set out in the motion to dismiss, numerous alternate avenues of relief provide the plaintiffs' a "means to be heard," *Wilkie*, 551 U.S. at 552. Some might even provide financial redress for the alleged harms. *See* Mot. 9–14. These alternatives include the criminal justice process itself, a motion for return of property under Federal Rule of Criminal Procedure 41(g), statutes affording damages and attorneys' fees for the wrongfully prosecuted and convicted, an FTCA suit against the United States, potential defenses to the SEC's civil enforcement action, and the plaintiffs' state-court lawsuit against Bass/Hayman. *See id.* Thus, there is no merit in saying that for these plaintiffs it's "damages or nothing." Opp. 16.

2. *Plaintiffs Misconstrue the Additional Special Factors Counseling Hesitation*

Separation-of-power principles further counsel hesitation here. *See* Mot. 15–18. The plaintiffs wrongly discount the danger of "intrusion on executive-branch authority to enforce the law and prosecute crimes," *Farah v. Weyker*, 926 F.3d 492, 501 (8th Cir. 2019), by suggesting this case concerns a "very rare" example of misconduct that does not "threaten the integrity of the justice system," Opp. 23. But saying that doesn't meaningfully distinguish this case from

---

[3] The plaintiffs also repeatedly refer to alternative processes as not "ripe." Opp. 16, 18–19. But the presence of special factors counseling hesitation has nothing to do with ripeness; it means damages relief "is unavailable as a matter of law, [and] the case must be dismissed." *Schweiker v. Chilicky*, 487 U.S. 412, 429 (1988).

5

*Cantú*, *Farah*, and others that have rejected similar *Bivens* extensions. Given the active and ongoing criminal investigation, the potential intrusion on the functioning of the criminal justice system is obvious. *See* Mot. 15–17. Prosecutors and law-enforcement agents may be deterred from legitimate investigations out of fear they might be sued personally, witnesses may no longer wish to cooperate or come forward, civil discovery might come in conflict with grand jury secrecy protections, and the jury pool could be tainted by salacious misconduct allegations. *See id.*; *see also Farah*, 926 F.3d at 500–01; *Corsi v. Mueller*, 422 F. Supp. 3d 51, 79 (D.D.C. 2019), *aff'd*, 819 F. App'x 6 (D.C. Cir. 2020). In addition, the plaintiffs mistakenly suggest the complex statutory and regulatory scheme arising out of the Securities and Exchange Act of 1934 is not a special factor because they have not sued any SEC officials and securities laws are irrelevant to their claims. *See* Opp. 24–25. But central to their claims is whether there was probable cause to search UDF headquarters for evidence of a *securities violation*. *See Franks*, 438 U.S. at 155–56; *see generally* Mot. 17–18.

Given the many special factors, this is not a case for extending *Bivens*. *See* Mot. 6–18. Here, as in *Cantú*, if the plaintiffs "want a damages suit . . . regarding complicated investigations such as this one, that request must be made to Congress," 933 F.3d at 424.[4]

---

[4] The plaintiffs cite *Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018), to argue the Court is "well suited" to consider their claims. Opp. 15, 17, 24. But their claims here are strikingly closer to those in *Cantú* and *Farah*, which hold the opposite. *Lanuza* arose in a starkly different context, involving "narrow and egregious facts." 899 F.3d at 1021. An ICE attorney was *prosecuted and convicted* of falsifying an immigration document to bar the plaintiff from obtaining lawful permanent residency. The Ninth Circuit felt those circumstances presented none of the usual reasons for judicial hesitation in creating new civil liability because "the only question remaining" was "the amount of damages," *id*. at 1033. None of the defendants here face criminal charges; according to the complaint they are instead investigating the plaintiffs. And the risk that a personal tort suit will interfere with a pending criminal investigation or any ensuing prosecution is both palpable and ample reason not to extend *Bivens*. *See Farah*, 926 F.3d at 500.

## II.        Plaintiffs' Claims Are Time-Barred and No Tolling Provisions Apply

The plaintiffs were aware of the federal investigation into UDF as early as 2015, *see* Compl. ¶¶ 116, 137, 142, 180–81, 186, knew of the search warrant central to their complaint when it was executed on February 18, 2016, *see id.* ¶ 17, and concede the alleged source of their business and reputational harm — the purported "short and distort" scheme — ended in October 2016, *see id.* ¶ 199. Thus, Texas's two-year statute of limitations expired long before they sued on April 13, 2020. *See* Mot. 18–20; *see also Spotts v. United States*, 613 F.3d 559, 573 (5th Cir. 2010). In response, the plaintiffs misconstrue the law on accrual and, as an alternative, wrongly suggest the limitations period should be tolled on fraudulent concealment grounds. Opp. 25–27.

The plaintiffs argue their Fourth Amendment unlawful search claim did not begin to accrue until February 19, 2019, when counsel in the criminal investigation reviewed the sealed search warrant affidavit. Opp. 25–26. However, the plaintiffs knew of "the existence of the injury" and "the connection between the injury and the defendant[s'] actions" on the day the warrant was executed on UDF headquarters. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999). Their contrary suggestion simply makes no sense and ignores Fifth Circuit precedent. *See Matter of Hoffman*, 955 F.3d 440, 444 (5th Cir. 2020) (claim accrued "at the moment Texas officials first seized" the plaintiff's property). As for their Fifth Amendment claim, the plaintiffs argue it did not accrue until "on or about April 12, 2018" when they obtained discovery in their suit against Bass/Hayman. Opp. 25. But again they ignore the distinction between "a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause." *United States v. Kubrick*, 444 U.S. 111, 122 (1979). The plaintiffs' claim accrued when they had "notice of facts which, in the exercise of due diligence, would have led to actual knowledge" of a link between the defendants and their alleged harm. *Jensen v. Snellings*, 841 F.2d 600, 606–07 (5th Cir. 1988). The plaintiffs allege they were aware of the federal

7

investigation into UDF, the individual defendants' involvement in it, and Bass/Hayman's short position as early as December 2015. *See* Compl. ¶ 137 (UDF tells SEC about alleged "short and distort" scheme); ¶ 142 (UDF alerts SEC of "run on UDF stock" and notes online post about "FBI/SEC/DOJ" involvement); ¶¶ 180–81 (UDF allegedly offered to cooperate in criminal investigation); ¶186 (plaintiffs were "aware of the criminal investigation" months before February 2016 search).

The plaintiffs also mistakenly suggest their claims are subject to equitable tolling. *See* Opp. 26–27. But they fall short of their burden to plead fraudulent concealment, which requires they "plausibly claim[] that [the defendants] *deceived* them as to the essential facts of the transaction." *Thompson v. Deutsche Bank Nat. Tr. Co.*, 775 F.3d 298, 307–08 (5th Cir. 2014). As to their Fourth Amendment claim, the plaintiffs argue the defendants "concealed their misconduct by keeping the search warrant materials under seal years after they executed the warrant." Opp. 27. But the defendants did not conceal the *search*, which is what matters. *See Matter of Hoffman*, 955 F.3d at 444. And the court, not the defendants, ordered the affidavit be sealed. *Cf. Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988) (explaining fraudulent concealment only applies where the *defendants* have engaged in "affirmative acts"). As to their Fifth Amendment claim, the plaintiffs contend the defendants concealed "their communications and involvement with Bass/Hayman under the guise of a criminal investigation." Opp. 27. That is too conclusory to invoke fraudulent concealment, and it wrongly suggests the defendants were obligated to reveal details about an active criminal investigation. And as already noted, the plaintiffs concede they knew of the defendants' investigation and their communications with Bass/Hayman at least four years ago. *See* Compl. ¶¶ 137, 142, 180–81, 186. Accordingly, the plaintiffs' claims are clearly time barred.

8

### III. Plaintiffs Have Not Overcome Defendants' Entitlement to Qualified Immunity

The plaintiffs only briefly discuss qualified immunity. For the most part, they merely repeat the complaint's conclusory allegations about the contents of the warrant affidavit. *See* Opp. 28–30. But allegations that Bass/Hayman's short sale of UDF stock was "illegal" and the defendants were fed "false and misleading information" they "knew or should have known" did not support probable cause, Compl. ¶¶ 5, 13, 20, 86, 167, are exactly the kind of "labels and conclusions" that fall short of pleading a clearly established constitutional violation, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, their Fourth Amendment unlawful search claim requires non-conclusory allegations that alleged misstatements and omissions were material to probable cause. *See Marks v. Hudson*, 933 F.3d 481, 488–89 (5th Cir. 2019). The plaintiffs have not pled all that was contained in the *sealed* warrant affidavit, only the parts they dispute or claim are missing, and their knowledge of the affidavit is based solely on notes from attorneys not involved in this lawsuit who were allowed only "qualified access" to the affidavit.[5] *See* Mot. 26–28.

The plaintiffs also try, for the first time, to further define their vague Fifth Amendment claim as "intentional[] interfere[nce] with Plaintiffs' right to pursue their chosen profession by taking improper actions that will damage Plaintiffs' business reputation." Opp. 29. But to the extent it exists at all, the due process "right to practice one's calling is not violated by the

---

[5] The plaintiffs also argue "judicial estoppel" should preclude the defendants' qualified immunity arguments. Opp. 29; *see also* ECF No. 32 (sealed Declaration of Neal Stephens). While judicial estoppel may apply where the same party makes an inconsistent claim in a prior legal proceeding, *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011), there is no inconsistency here nor is there an identity of parties as the *United States* is conducting the criminal investigation and the plaintiffs have sued these defendants in their *personal capacities*. *Cf. McCoy v. Hernandez*, 203 F.3d 371, 375 (5th Cir. 2000) (collateral estoppel did not apply in a civil case because individual officers were not parties in prior criminal proceedings).

9

execution of a search warrant," or by any of the other things the plaintiffs allege. *Conn v. Gabbert*, 526 U.S. 286, 293 (1999). The cases plaintiffs cite provide no more than "scant metaphysical support" for their claimed right. *Id.* at 291. None meets the "high 'degree of specificity'" required to clearly establish their claimed violation. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).[6] And none "place[s] the constitutionality of the officer's conduct 'beyond debate.'" *Id.* at 589 (internal citation omitted).

## CONCLUSION

For these reasons, the defendants' motion to dismiss should be granted.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch, Civil Division

*/s/ Andrea Jae Friedman*
ANDREA JAE FRIEDMAN
Trial Attorney
Civil Division, U.S. Department of Justice
P.O. Box 7146, Washington, DC 20005
E-mail: andrea.j.friedman@usdoj.gov
(202) 305-0336
California Bar # 291692

**ATTORNEYS FOR INDIVIDUAL-CAPACITY DEFENDANTS NICHOLAS BUNCH, CHRISTINE EDSON, AND DAVID KLIMEK**

---

[6] *See United States v. Robel*, 389 U.S. 258, 265 n.11 (1967) (noting only generally a right "to follow a chosen profession free from unreasonable governmental interference" in determining constitutionality of communist-era statute targeting "subversives"); *United States v. Briggs*, 514 F.2d 794, 798 (5th Cir. 1975) (deciding whether names of "unindicted conspirators" should be scrubbed from indictment in prosecution arising out of political protests).

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 6th day of October, 2020, a true copy of this motion with attachments was served on all counsel of record by way of the Court's CM/ECF system and by electronic mail.

*/s/ Andrea Jae Friedman*
ANDREA JAE FRIEDMAN